# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF POSTALIS FOR AN ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782 | Case No. 1:18-mc-00497 (JGK) |

## MEMORANDUM OF LAW IN OPPOSITION TO POSTALIS'S APPLICATION TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Lewis J. Liman
Jeffrey A. Rosenthal
One Liberty Plaza
New York, New York 10006
(212) 225-2000

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ........................................................................................ 4

    1.   The Relevant Parties ................................................................................ 4

    2.   The Foreign Proceedings And The Claims Alleged ................................. 5

    3.   The Current Proceedings ......................................................................... 8

ARGUMENT ............................................................................................................ 8

    1.   Postalis Has Not Satisfied Its Burden To Show The Discovery It Seeks Is For Use In a Foreign Proceeding ............................................ 10

        a.   Section 1782 Cannot Be Used To Obtain Pre-filing Discovery For A Hypothetical Claim In A United States Court ................................ 10

        b.   The Requested Discovery Is Not "For Use" In The Foreign Proceeding ..................... 14

    2.   Postalis's Application Should Be Denied For Other Reasons ............................................ 17

        a.   The Court Should Deny The Application Under Fed. R. Civ. P. 45 ............................. 17

        b.   The Proposed Subpoena Is Overbroad ................................. 20

        c.   Postalis's Application Is Made In Bad Faith And Reflects An Attempt To Circumvent Proof-Gathering Restrictions ................................. 21

CONCLUSION ........................................................................................................ 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ayyash v. Crowe Horwath LLP,*
No. 17 Civ. 482 (AJN), 2018 WL 2976017 (S.D.N.Y. June 13, 2018)......................  3, 10

*Bayer AG v. Betachem, Inc.,*
173 F.3d 188 (3d Cir. 1999)..........................................................................................  17

*BSN Med., Inc. v. Parker Med. Assocs., LLC,*
No. 10 Misc. 15 (JFK), 2011 WL 197217 (S.D.N.Y. Jan. 19, 2011) ..........................  17

*Burns v. Bank of Am.,*
No. 03 Civ. 1685 (RMB) (JCF), 2007 WL 1589437 (S.D.N.Y. June 4, 2007)............  18

*CE Int'l Res. Holdings LLC v. S.A. Minerals Ltd. P'ship,*
No. 12 Civ. 8087 (CM), 2012 WL 6178236 (S.D.N.Y. Dec. 10, 2012)......................  15

*Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, LLP,*
798 F.3d 113 (2d Cir. 2015)................................................................................  12, 14

*Crye Precision LLC v. Duro Textiles, LLC,*
689 F. App'x 104 (2d Cir. 2017) .................................................................................  20

*Euromepa S.A. v. R. Esmerian, Inc.,*
51 F.3d 1095 (2d Cir. 1995).........................................................................................  21

*financialright GmbH v. Robert Bosch LLC,*
294 F. Supp. 3d 721 (E.D. Mich. 2018).......................................................................  21

*Frigerio v. United States,*
No. 10 Civ. 9086 (SAS), 2011 WL 3477135 (S.D.N.Y. Aug. 5, 2011) ...................  12

*Glock v. Glock, Inc.,*
797 F.3d 1002 (11th Cir. 2015) .............................................................................  13, 22

*In re Accent Delight Int'l Ltd.,*
869 F.3d 121 (2d Cir. 2017)..........................................................................................  13

*In re Application of Caratube Int'l Oil Co.,*
730 F. Supp. 2d 101 (D.D.C. 2010) ..............................................................................  19

ii

*In re Application of Elvis Presley Enters. LLC or an Order to Take Discovery Pursuant
to 28 U.S.C. § 1782,*
  No. 15 mc 386 (DLC), 2016 WL 843380 (S.D.N.Y. Mar. 1, 2016)............................ 21

*In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf,*
  No. Civ. M19-88 (BSJ), 2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006)...................... 14-15

*In re Application For An Order Permitting Metallgesellschaft AG To Take Discovery,*
  121 F.3d 77 (2d Cir. 1997)...................................................................... 11, 18

*In re Application of OOO Promnefstroy,*
  Misc. No. 19 Civ. 99 (RJS), 2009 WL 3335608 (S.D.N.Y. Oct. 15, 2009) ................ 20

*In re Biovail Corp. Sec. Litig.,*
  247 F.R.D. 72 (S.D.N.Y. 2007) .................................................................. 17

*In re Digitechnic,*
  No. C07–414 (JCC), 2007 WL 1367697 ................................................. 19, 20-21

*In re Edelman,*
  295 F.3d 171 (2d Cir. 2002)...................................................................... 17

*In re Ex Parte Application of Qualcomm Inc.,*
  162 F. Supp. 3d 1029 (N.D. Cal. 2016) ........................................................ 20

*In re Ex Parte Glob. Energy Horizons Corp.,*
  647 F. App'x 83 (3d Cir. 2016) .................................................................. 20

*In re Fischer Advanced Composite Components AG,*
  No. C08 Civ. 1512 (RSM), 2008 WL 5210839 (W.D. Wash. Dec.11, 2008).............. 18

*In re Harbour Victoria Inv. Holdings Ltd.,*
  No. 15-MC-127 (AJN), 2015 WL 4040420 (S.D.N.Y. June 29, 2015)...................... 13

*In re Imanagement Services, Ltd.,*
  No. Misc. 05 Civ. 89 (FB), 2005 WL 1959702 (E.D.N.Y. Aug. 16, 2005) ................ 21

*In re Judicial Assistance Pursuant to 28 U.S.C. § 1782 by Macquarie Bank Ltd.,*
  No. 2:14 Civ. 00797 (GMN), 2015 WL 3439103 (D. Nev. May 28, 2015)................ 18

*In re Kreke Immobilien KG,*
  No. 13 Misc. 110 (NRB), 2013 WL 5966916 (S.D.N.Y. Nov.8, 2013)................. 18-19, 22

*In re Petition of Allegretti*,
    229 F.R.D. 93 (S.D.N.Y. 2005) .................................................................... 13

*In re Pimenta*,
    942 F. Supp. 2d 1282 (S.D. Fla. 2013) ...................................................... 14

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004) ............................................................................ 8, 9, 17

*Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*,
    895 F.3d 238 (2d Cir. 2018) ........................................................................ 9

*Lazaridis v. Int'l Ctr. for Missing and Exploited Children*,
    760 F. Supp. 2d 109 (D.D.C. 2011) .......................................................... 11

*Marshall v. Madoff*,
    No. 15-mc-56 (JGK), 2015 WL 2183939 (S.D.N.Y. May 11, 2015) (D.D.C. 2011)... 12, 13

*Patterson v. Balsamico*,
    440 F.3d 104 (2d Cir. 2006) ...................................................................... 15

**Rules and Statutes**

28 U.S.C. § 1782 ............................................................................ <u>passim</u>

Fed. R. Civ. P. 45 ........................................................................... <u>passim</u>

Fed. R. Civ. P. 27(a) ......................................................................... 12, 13

The Bank of New York Mellon Corporation ("BNY Mellon") submits this memorandum of law in opposition to the petition by Postalis – Instituto de Previdência Complementar - Under Intervention (*Sob Intervenção*) ("Postalis") pursuant to 28 U.S.C. § 1782 (the "Application") and respectfully requests that the Court deny the Application in full.

## PRELIMINARY STATEMENT

Postalis pursues this Application with a solitary purpose:  to seek discovery that Postalis hopes will help it file a United States lawsuit against BNY Mellon.  This is not speculation; Postalis itself admitted this intent in public statements.

Shortly before filing this Application, Postalis told the Brazilian newspaper *O Globo* that "[i]n the U.S., Postalis recently hired the law firm Kobre & Kim to initiate proceedings known as 'Discovery', which is searching for documents before a lawsuit is filed.  The objective is to try to find evidence that BNY Mellon in the U.S. was aware of alleged irregularities committed by the Brazilian branch with regard to Postalis.  Only after that does the fund intend to file a lawsuit against the bank in the U.S. court system."  Robalinho Decl. Ex. C, at 2.[1]  A contemporaneously-published article in the Brazilian newspaper *Epoca* added, in a quote attributed to Postalis's legal manager, Leandro Medeiros, that "[i]t doesn't help us to go into this [lawsuit] blind."  *Id.* Ex. D, at 2.

After filing the Application, Postalis issued a press release in Brazil proclaiming its hope that it would obtain "evidence [that] should indicate that the American BNY Mellon actively or passively participated in the fraud . . . aiming to hold the US bank accountable."  *Id.* Ex. E, at 1.

---

[1]     The Declaration of Fabiano Robalinho Cavalcanti in Support of The Bank of New York Mellon's Opposition to Postalis's Application to Take Discovery Pursuant to 28 U.S.C. § 1782, dated November 20, 2018 and submitted with this memorandum, is referred to as "Robalinho Decl."

Postalis's contemporaneous public declarations in Brazil expose the falsity of its representations here that it seeks discovery for use in Postalis's Brazil Proceedings against BNY Mellon's indirect subsidiaries (hereinafter referred to as the "Brazilian entities").  *See* Application, at 1; Memorandum, at 1.[2]

Postalis makes only the most cursory, conclusory, and conditional statement that BNY Mellon even has documents relevant to the Brazil Proceedings:  "Postalis has reason to believe that BNY Mellon *may* possess or have custody or control of documents and information related to . . . [the Brazilian entities'] management of the Brazil Funds and related investment decisions, including its administration and management of the Brazil Funds."  Martin Decl. ¶ 27 (emphasis added).[3]  Postalis offers no basis for that belief, nor does it demonstrate how any documents in the possession of an indirect U.S. parent of the Brazilian entities would be relevant to establish the misconduct of those entities in Brazil with respect to the investments at issue in those proceedings.  Postalis has never asserted in Brazil that it needs the type of documents it now says it intends to use there, nor has it ever tried to obtain them in Brazil from the parties most likely to have them, the Brazilian entities.  In four of the six Brazil Proceedings that the Application purports to be in aid of, Postalis has not made any document requests, and in the other two, Postalis has sought *no* documents of any kind concerning seven of the nine Brazil Funds listed in the proposed subpoena and *no* documents concerning the management of or investment advice to

---

[2]     Postalis's Memorandum of Law in Support of its Ex Parte Application (Oct. 31, 2018), ECF No. 3, is referred to as "Memorandum."

[3]     Postalis's Declaration of Marcelo Martin Carolino de Paiva (Oct. 31, 2018), ECF No. 4, is referred to as "Martin Decl."  Any allegations from the Martin Decl. that are cited herein are done solely for purposes of BNY Mellon's opposition to the Application without acceptance of their truth.

the remaining two Brazil Funds (except to the extent one could characterize the transaction records themselves to be management-related documents).  Robalinho Decl. ¶ 45, Exs. A, B. None of the evidence produced in the Brazil Proceedings even suggests that any documents in BNY Mellon's possession would be relevant, much less helpful.  *Id*. at ¶ 47.

The Postalis Application fails for numerous independent reasons:

*First*, the Federal Rules prohibit pre-complaint discovery, and courts in this Circuit have cautioned against "using the § 1782 petition as a fishing expedition to determine if it should pursue litigation against Respondents."  *Ayyash v. Crowe Horwath LLP*, No. 17 Civ. 482 (AJN), 2018 WL 2976017, at *3 (S.D.N.Y. June 13, 2018).  But that is exactly what Postalis seeks to do here.  The Application is a transparent attempt to circumvent the Federal Rules and to use Section 1782, not to obtain evidence for use in a foreign proceeding, but rather to obtain discovery for use against non-party BNY Mellon in the United States.  Accordingly, Postalis cannot meet the "for use in a foreign proceeding" prerequisite necessary even to subject the Application to the Court's discretion.

*Second*, Postalis also cannot show that the evidence it seeks is for "some advantage" in any foreign proceeding, the standard in the Second Circuit.  The Application is devoid of any attempt to connect the voluminous documents it seeks to its claims and defenses in the foreign proceedings.  Indeed, in several of the Brazil Proceedings, the deadline for discovery has passed without Postalis ever seeking these types of documents.

*Third*, even were Postalis to satisfy the statutory prerequisites under Section 1782, the Application never once addresses the requirements of Federal Rule of Civil Procedure 45, which are also applicable to requests for discovery under the statute.  For good reason:  Postalis's proposed subpoena fails those standards.  Postalis's proposed subpoena would not be permissible

if it were seeking evidence for a proceeding in a United States domestic court.  That Postalis claims to seek the evidence for use in a foreign court does not give it any greater right to burden a person who is, in fact, a stranger to that litigation.

*Fourth*, the discretionary factors are decidedly against the Application.  Postalis seeks—for an eleven-year period stretching from January 1, 2005 to February 4, 2016[4]—virtually every document that might conceivably exist about nine Brazilian funds that Postalis invested in.  This is not the "narrowly tailored" discovery that Postalis proclaimed in the Application; it is overbroad and unduly burdensome.

*Finally*, the Application should be denied because it was made in bad faith and is an attempt to circumvent not only proof gathering restrictions in the United States, but also the requirements of the Brazilian Code to obtain discovery.

Thus, the Application fails the mandatory requirements of Section 1782.  But even if it did not, the Court should nonetheless exercise its discretion and deny the Application in full.[5]

## STATEMENT OF FACTS

### 1.  The Relevant Parties

BNY Mellon is a global financial services firm that is headquartered in New York, New York.  It has direct and indirect subsidiaries in over two dozen countries, many of which manage

---

[4]      This time period substantially exceeds the relevant time period in the Brazil Proceedings, further underscoring the pretextual nature of the Application.

[5]      If the Court permits Postalis to serve even a limited subpoena, BNY Mellon reserves its customary rights under the Federal Rules to object and engage in a meaningful meet and confer process and/or move to quash the subpoena under Rule 45.

and service assets for financial institutions, corporations, and individual investors.  BNY Mellon, Quarterly Report (Form 10-Q) (Nov. 6, 2018).

BNY Mellon Serviços Financeiros Distribuidora de Titulos e Valores Mobiliários S.A. ("DTVM") is an indirect Brazilian subsidiary of BNY Mellon that provides fund administration and related services in Brazil.  BNY Mellon Administração de Ativos Ltda. ("Ativos") was a subsidiary of DTVM that used to provide investment management services to entities in Brazil, although it has been and remains inactive since 2016.  BNY Mellon Alocação de Patrimônio Ltda. ("Patrimônio") is an indirect Brazilian subsidiary of BNY Mellon that provides investment management services in Brazil.  Robalinho Decl. ¶¶ 7-10.

Postalis is one of DTVM's clients.  Pursuant to a contract with Postalis, DTVM acts as administrator of Postalis's portfolio, which includes investments in certain of Postalis's investment funds.  Martin Decl. ¶ 9.  Ativos and Patrimônio provided investment management services related to some investment funds in which Postalis invested.  *Id*. ¶ 10.  BNY Mellon is not a party to DTVM's contract with Postalis, does not have any rights or responsibilities under it, and is not alleged to have provided services to Postalis or been involved in the alleged wrongdoing of the Brazilian entities.  Robalinho Decl. ¶¶  13, 21-22.

### 2.  The Foreign Proceedings And The Claims Alleged

Postalis's six Brazilian lawsuits, filed between August 2014 and February 2016, stem from alleged misconduct by Postalis employees and officers and by a Brazil-based portfolio management company (not affiliated with BNY Mellon) that serviced certain of the Brazil Funds, Martin Decl. ¶ 11, and from losses Postalis experienced in certain investments between 2011 and 2014 when the Brazilian economy was in a downward spiral.  Robalinho Decl. ¶ 19.

Numerous public authorities—including the Brazilian Securities and Exchange Commission (the "CVM)", the U.S. Securities and Exchange Commission (the "SEC") and the

Brazilian Public Prosecutor—have investigated the Postalis fraud and concluded that its losses were largely caused by fraud and embezzlement involving its own former leaders.  *Id.* ¶ 15. Postalis's former President, Alexej Predtechensky, was accused of misconduct by the CVM and was also considered by the SEC to be the main beneficiary of a diversion of millions of Brazilian reais belonging to Postalis.  *Id.* ¶ 15.  Predtechensky's successor as President, Antônio Carlos Conquista, was investigated on allegations of transacting with Postalis at above-market prices and had his assets frozen in 2015, and one of his successors as President, André Luís Carvalho da Motta e Silva, resigned last year after being accused by a whistleblower of bribery.  *Id.* ¶ 16.

Each of the Brazil Proceedings seeks to shift liability and responsibility for Postalis's investment losses from the Brazil Funds and Postalis itself to the defendants on the theory that they acted negligently or violated local regulations in their Brazilian capacity as administrator or manager.  Martin Decl. ¶¶ 17-23.  The complaints claim the defendants failed to supervise and should have discovered the alleged misconduct sooner.  The specific investments at issue in the Brazil Proceedings that are the subject of the proposed subpoena are in (i) the Brasil Sovereign II Fundo de Investimento em Dívida Externa, (ii) the Atlântica Real Sovereign Fund, (iii) BNY Mellon Douro Fundo de Investimento em Cotas de Fundos de Investimento Multimercado, (iv) São Bento Fundo de Investimento em Cotas de Fundos de Investimento Multimercado, (v) the FCP Fundo de Investimento em Cotas de Fundos de Investimento Multimercado, (vi) the Fundo de Investimento General Shopping Ativo e Renda – FII, (vii) Fundo de Investimento em Cotas de Fundos de Investimento Multimercado Serengeti, (viii) the Riviera Fundo de Investimento Multimercado – Crédito Privado, and (ix) the Tejo Fundo de Investimento em Ações (collectively, the "Brazil Funds").  Proposed Subpoena, at 1 (Oct. 31, 2018), ECF No. 1-2.

BNY Mellon is not a party to any of the Brazil Proceedings.  Robalinho Decl. ¶ 30.  There are no allegations that BNY Mellon had any role in the administration or management of the Brazil Funds, played any role in their investment decisions, or owed Postalis any duties.  *Id.* ¶ 31.  None of the complaints refer to any alleged misconduct by BNY Mellon, and Postalis has never cited any conduct of BNY Mellon as supporting the claims against DTVM, Ativos, or Patrimônio.  *Id.* ¶¶ 23-28, 31.

Postalis claims that the evidence production stage in Brazil Proceedings 1 and 6 has yet to commence, while the evidence production stage in Brazil Proceedings 2 through 5 is expected to last for approximately an additional year.  Martin Decl. ¶¶ 25-26.  In fact, the evidence production stage in three of these proceedings (which were filed as many as four years ago) have not only commenced, but also concluded without Postalis ever requesting a single document from DTVM, Ativos, or Patrimônio related to their administration and management of the Brazil Funds or any related investment decisions (except for a request for the production of a specific contract, limited communications with two specific entities relating to one of the Brazil Funds, and certain transactional documents related to the acquisitions made in just two of the nine Brazil Funds).  Robalinho Decl. ¶¶ 38, 41, 45.  Moreover, none of the evidence that has been produced refers to documents in the possession of BNY Mellon.  *Id.* ¶ 45.

In October 2017, Superintendência Nacional de Previdência Complementar ("Previc"), Brazil's pension fund regulator, placed Postalis under intervention (*Sob Intervenção*) and appointed an independent manager due to Postalis's failure to comply with standards related to the accounting of technical reserves and application of resources.  *Id.* ¶ 17.  Previc has extended the intervention period several times, and Postalis remains under the control of the intervenor appointed by Previc.  *Id.* ¶ 18.  According to articles in two Brazilian publications, "[t]he

investigative commission instituted by Previc to investigate Postalis's past operations concluded that more than a dozen former leaders should be responsible for irregularities in the fund." *Id.* Exs. C, D.

### 3.  The Current Proceedings

On October 31, 2018, Postalis filed the Application *ex parte* seeking an order pursuant to 28 U.S.C. § 1782 authorizing it to serve a subpoena on BNY Mellon.  The proposed subpoena broadly seeks all documents in BNY Mellon's possession from January 1, 2005 to February 4, 2016 concerning the nine Brazil Funds, "including the management of the Brazil Funds, investment decisions related to them, and any investigation [BNY Mellon] conducted with respect to [the] administration and/or management of the Brazil Funds."  Proposed Subpoena, at 6.  Postalis also seeks to depose a corporate representative of BNY Mellon about the same subject.  *Id*.  In short, Postalis does not seek information specifically about the investment decisions at issue in the Brazil Proceedings,  but—as its Application makes clear—about BNY Mellon's general relationship (if any) to the decision-making by the Brazilian entities and Postalis itself.

In the Application, Postalis did not set forth any basis to believe that BNY Mellon has any documents relevant to the Brazil Proceedings.  Nor did it explain how documents in BNY Mellon's possession—but not in the possession of any of the Brazilian entities—would bear on the alleged negligence of those Brazilian entities.

The Court denied Postalis's request for the issuance of a subpoena *ex parte* and directed this briefing.

## <u>ARGUMENT</u>

Section 1782 "authorizes, but does not require," that district courts provide judicial assistance to applicants for use in foreign proceedings.  *See Intel Corp. v. Advanced Micro*

*Devices, Inc.*, 542 U.S. 241, 255 (2004); *see also Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 242 (2d Cir. 2018) ("Section 1782 states that a court 'may order' such discovery; so even if a court has jurisdiction under the statute to grant a petition, the decision to grant it is discretionary.").

A district court may grant an application under Section 1782 where: (1) the person from whom discovery is sought resides or is found in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign or international tribunal, and (3) the application is made by a foreign or international tribunal or any interested person. 28 U.S.C. § 1782.

Once these statutory prerequisites are met, a district court must then decide whether to exercise its discretion to grant the application. The Supreme Court has identified four factors to guide the district court's discretion: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which case, "the need for § 1782(a) aid generally is not as apparent"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) whether the § 1782 request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." *Intel Corp.*, 542 U.S. at 264-65.

Because the Application fails to meet the statutory requirements, and the discretionary factors weigh heavily against granting it, the Application should be denied in its entirety.

1. **Postalis Has Not Satisfied Its Burden To Show The Discovery It Seeks Is For Use In a Foreign Proceeding**

   a. *Section 1782 Cannot Be Used To Obtain Pre-filing Discovery For A Hypothetical Claim In A United States Court*

The Application fails the second statutory requirement, namely that the discovery sought be "for use" in the foreign proceeding. To the contrary, Postalis's repeated public statements plainly admit that its Application seeks discovery from BNY Mellon for use in pleading a new action against BNY Mellon in the United States.

Postalis has made no secret of its desire to bring claims against BNY Mellon in the United States. Robalinho Decl. ¶¶ 52-61, Exs. C, D, E. Postalis publicly declared that "[i]t doesn't help us to go into this [lawsuit] blind." Robalinho Decl. Ex. D, at 2. As Postalis acknowledged shortly before making the Application, "[i]n the U.S., Postalis recently hired the law firm Kobre & Kim to initiate proceedings known as 'Discovery', which is searching for documents before a lawsuit is filed. The objective is to try to find evidence that BNY Mellon in the U.S. was aware of alleged irregularities committed by the Brazilian branch with regard to Postalis. Only after that does the fund intend to file a lawsuit against the bank in the U.S. court system." Robalinho Decl. Ex. C, at 2. In a press release it issued after filing the Application, Postalis declared its hope to obtain "evidence [that] should indicate that the American BNY Mellon actively or passively participated in the fraud . . . aiming to hold the US bank accountable." Robalinho Decl. Ex. E, at 1.

Postalis's attempt to use Section 1782 to obtain discovery to bring future claims against BNY Mellon in the United States is impermissible. Courts in this Circuit have cautioned against "using the § 1782 petition as a fishing expedition to determine if it should pursue litigation against Respondents." *Ayyash*, 2018 WL 2976017, at *3.

Postalis's intent is also transparent from the face of its request.  Postalis's request of BNY Mellon is not targeted at the conduct of the Brazilian entities with respect to the specific investments at issue in the Brazil Proceedings.  Were Postalis really interested in obtaining such information for use in Brazil, it could have at least sought it in Brazil from the Brazilian entities it sued, using readily available Brazilian discovery procedures.  *See* Robalinho Decl. ¶¶ 33-36. Instead, it seeks evidence not of what the Brazilian entities did with respect to the investments but what *BNY Mellon* knew or did (if anything):  all documents in BNY Mellon's possession for over a decade concerning "the Brazil Funds, including the management of the Brazil Funds, investment decisions related to them."  Proposed Subpoena, at 6.  It thus is transparently directed at conduct and/or knowledge of BNY Mellon to support the filing of United States claims against BNY Mellon.

This type of pre-action discovery is not proper either under 28 U.S.C. § 1782 or under the Federal Rules.  First, under Section 1782, the Second Circuit has instructed that "[i]f the judge . . . suspects that the [§ 1782 discovery] request is a 'fishing expedition' . . . the district court should deny the request."  *In re Application For An Order Permitting Metallgesellschaft AG To Take Discovery*, 121 F.3d 77, 79 (2d Cir. 1997) (*citing In re Request For Assistance From Ministry of Legal Affairs of Trin. & Tobago*, 848 F.2d 1151, 1156 (11th Cir. 1988)); s*ee also Lazaridis v. Int'l Ctr. for Missing and Exploited Children, Inc.*, 760 F. Supp. 2d 109, 115 (D.D.C. 2011) (denying application under Section 1782 because applicant's "wide-ranging request" suggested applicant sought information more for "his general use than for use by the Greek tribunals in their investigation or prosecution").[6]

---

[6]     For two additional reasons, Postalis cannot justify its Application by arguing that notwithstanding its public statements regarding its intent to use Section 1782 to support a future lawsuit in the United States (which is plainly

Second, that precept is even more important when the applicant does not seek information for a potential foreign proceeding, but, as Postalis admits, to obtain evidence to bring a United States proceeding which otherwise would be "blind."  The  Federal Rules do not permit a party to obtain discovery for purposes of filing a complaint.  *See* Fed. R. Civ. P. 27(a) (pre-complaint discovery available only to perpetuate testimony and only when necessary to "prevent a failure or delay of justice").  "The American legal system does not permit pre-action discovery."  *Frigerio v. United States*, No. 10 Civ. 9086 (SAS), 2011 WL 3477135, at *1 (S.D.N.Y. Aug. 5, 2011).  Were Postalis to have attempted to obtain this discovery under the Federal Rules, its Application plainly would have failed.  It does not seek to perpetuate testimony, it does not identify a specific document or subject as to which BNY Mellon has particular knowledge that is at risk of loss, and the desire to avoid a "blind" complaint is not a "failure . . . of justice."  It is how our justice system operates.  *See Marshall v. Madoff*, No. 15-mc-56 (JGK), 2015 WL 2183939, at *2 (S.D.N.Y. May 11, 2015) ("Courts have made clear that Rule 27 may not be used . . . to enable parties to fish for some ground for bringing suit")

---

prohibited), it actually seeks to support a future proceeding in Brazil against BNY Mellon.  First, unlike the third party discovery sought (but denied) in *Certain Funds*, because the Application and such theoretically "contemplated foreign proceeding" here would both be against BNY Mellon, Postalis cannot satisfy the first discretionary *Intel* factor, namely that the party from whom Section 1782 discovery is sought not be a participant in the foreign proceeding.  Second, the Second Circuit has held, in the context of a request for evidence to use in a planned but not pending foreign proceeding, that the applicant "must have more than a subjective intent to undertake some legal action, and must provide some objective indicium that the action is being contemplated."  *Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, LLP*, 798 F.3d 113, 123 (2d Cir. 2015)  "[A] 1782 applicant must present to the district court some concrete basis from which it can determine that the contemplated proceeding is more than just a twinkle in counsel's eye."  *Id*. at 124.

(internal citation and quotations omitted); *In re Petition of Allegretti*, 229 F.R.D. 93, 97 (S.D.N.Y. 2005) (holding that Rule 27 is designed to perpetuate known testimony and not to discover new evidence, and denying application where denying application where petitioners stated "very little" about the proposed testimony).   If a person wants to burden a party with discovery, it must first do an investigation and then file a complaint consistent with Rule 11, allow that complaint to be tested by appropriate motion practice and ultimately frame an appropriate discovery request.  *Marshall*, 2015 WL 2183939, at *3.

It would be a perversion of those principles and of Rule 27(a) to permit Postalis to obtain through the backdoor of Section 1782, discovery denied to every other party merely by the expedient of it having filed actions in Brazil and simply declaring that it intends to use the documents and testimony in Brazil.  *See id.* at *3 (denying discovery that the court found was motivated by desire to file a complaint); *Glock v. Glock, Inc*., 797 F.3d 1002, 1009 (11th Cir. 2015) (holding that evidence "that a § 1782 applicant could attempt to abuse the statute to obtain documents outside the discovery procedures set forth in the Federal Rules of Civil Procedure. . . . is a valid reason to reject a § 1782 application in the first place"); *accord In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 135 (2d Cir. 2017)).   Indeed, when confronted with a similar circumstance in *In re Harbour Victoria Inv. Holdings Ltd.*, No. 15-MC-127 (AJN), 2015 WL 4040420, at *6 (S.D.N.Y. June 29, 2015), the court concluded that "while theoretically usable in India," it "finds it hard to believe that the discovery Petitioner now seeks is actually intended for use in the Indian proceeding as opposed to the U.S. proceeding."[7]

---

[7]   The *Harbour Victoria* court assumed that the discovery was for use in the foreign proceeding, and thus rejected the Section 1782 application as a matter of discretion on the basis that "this is a fishing expedition" in search of support for new proceedings to be brought.  *Id.* at *8.

13

###### b. The Requested Discovery Is Not "For Use" In The Foreign Proceeding

Although Postalis's objective to discover potential claims against BNY Mellon provides sufficient reason to deny the Application, Postalis's Application also fails the "for use" prerequisite regardless of Postalis's true motives.

The Second Circuit does not permit a foreign party to avail itself of the power of a United States court to impose discovery obligations on a non-party on the mere declaration that the evidence it seeks is relevant and would be "for use" in a foreign proceeding.  "[T]he burden [is] on a *§ 1782 applicant* to establish that it will have some means of actually using the evidence in the foreign proceeding." *Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, LLP*, 798 F.3d 113, 122 n.11 (2d Cir. 2015) (emphasis added).  Moreover, it is not sufficient "in and of itself" for the applicant to show that the requested information is relevant.  As the Second Circuit directed in *Certain Funds*, "[b]y adopting the phrase 'for use,' Congress plainly meant to require that § 1782 applicants show that the evidence sought is 'something that will be employed with some advantage or serve some use in the proceeding.'" *Id.* at 120 (citation omitted).

The very cases cited by Postalis demonstrate the type of showing that has to be made. For example, in *In re Pimenta*, 942 F. Supp. 2d 1282 (S.D. Fla. 2013), the applicant submitted a declaration and exhibits showing that the banks from whom discovery was sought would have evidence supporting the applicant's position in the foreign proceeding, stated what they expected that evidence would show (*viz.*, the existence of concealed assets), and provided a basis to believe the evidence would be uniquely in the possession of the American parties.  The court noted that the applicants were "not seeking information . . . for 'fishing expeditions or harassment.'"  *Id*. at 1288 (citation omitted); *see also In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, No. Civ. M19-88 (BSJ), 2006 WL 3844464, at *8 (S.D.N.Y. Dec. 29, 2006)

("[R]equests [must] appear to be sufficiently tailored to the litigation issues for which production is sought.").

Here, the Application does not come close to meeting those standards. Postalis offers only a single sentence to support the claim that it seeks discovery for use in the foreign proceedings. *See* Martin Decl. ¶ 28 (and repeated nearly verbatim in Memorandum, at 10). That sentence asserts—but does nothing to establish—that the requested evidence "will assist Postalis in the Brazil Proceedings by supporting its claims that [the Brazilian entities] (i) acted negligently . . . and/or (ii) breached fiduciary duties related to administration and management of the Brazil Funds and/or (iii) were directly or indirectly involved or responsible for such misconduct, including violations of Brazilian regulations." *Id.* That is pure *ipse dixit*. It is an undifferentiated restatement of the claim against the Brazilian entities. If Postalis's one-sentence declaration is sufficient, then any Section 1782 applicant could burden a third party with the obligation to search for and respond to requests for foreign discovery through the mere assertion that the third party may have documents relevant to the foreign proceeding.[8]

On its face, Postalis's proposed subpoena belies any claim that the requested discovery is relevant to the foreign proceeding. The subpoena makes a broad request for "all" information from January 1, 2005 to February 4, 2016 in BNY Mellon's possession, custody, or control relating to the nine Brazil Funds, including the management of and investment in those funds.

---

[8]     Having failed to make the requisite threshold showing in its Application, Postalis may not make new *post hoc* arguments in reply. *Patterson v. Balsamico*, 440 F.3d 104, 114 n.5 (2d Cir. 2006) (Koeltl, J., sitting by designation) ("[T]his Court generally will not consider arguments raised for the first time in a reply brief."); *CE Int'l Res. Holdings LLC v. S.A. Minerals Ltd. P'ship*, No. 12 Civ. 8087 (CM), 2012 WL 6178236, at *2 (S.D.N.Y. Dec. 10, 2012) ("It is improper in this district and this circuit to introduce new arguments in reply.").

But the Brazil Proceedings focus on claims of negligence and breach of regulatory duties by the Brazilian entities over a considerably narrower period of time, relating to a significantly narrower set of investments, and a specific set of actions by the Brazilian entities that are alleged to be wrongful.  Robalinho Decl. ¶ 45.  Postalis makes no effort to demonstrate what evidence is in non-party BNY Mellon's possession, much less how that evidence "will be employed with some advantage" or is even relevant to its claims or would demonstrate that the Brazilian entities acted improperly.  Nor does Postalis tie its request for discovery to any allegations in any of the complaints.  Notably, the Brazil Proceedings contain no allegations with respect to BNY Mellon, and none of the six complaints underlying the foreign proceedings even mentions any conduct by BNY Mellon.  *Id.* ¶¶ 23-28, 31.  Postalis cites no documents from the Brazil Proceedings suggesting that BNY Mellon is in possession of relevant documents.  In short, Postalis offers no reason for this Court to conclude that such documents are in BNY Mellon's possession or, if they are, that they would not also be in the possession of the Brazilian entities.

The transparent nature of Postalis's request is demonstrated by its conduct.  If Postalis were genuinely interested in the conduct of the Brazilian entities "for use" in the Brazil Proceedings—rather than BNY Mellon's knowledge of that conduct for use in U.S. proceedings—it would have sought these documents from the Brazilian entities some time over the past four years.  Document discovery from parties is readily available in Brazil, Robalinho Decl. ¶ 35, and while Postalis has made some limited document requests, it has never pursued discovery of these categories of documents.  *Id.* ¶ 45.  That it did not do so, and that it cannot point to any purported evidence of negligence by the Brazilian entities that it could not get directly from the Brazilian entities, shows its request is pretextual.

## 2.  Postalis's Application Should Be Denied For Other Reasons

Because Postalis has not satisfied the statutory prerequisites under Section 1782, this Court need not engage in further analysis.  But in the event that this Court determines that Postalis has met its burden under Section 1782, the other factors heavily weigh against the Application.

### a.   The Court Should Deny The Application Under Fed. R. Civ. P. 45

It is elementary that an applicant for discovery under Section 1782 cannot receive discovery that would not be permitted under the Federal Rules of Civil Procedure.[9]  *Intel Corp.*, 542 U.S. at 265-66 (courts look to the Federal Rules of Civil Procedure and "the controls on discovery available to the District Court"); *In re Edelman*, 295 F.3d 171, 181 (2d Cir. 2002) (holding that Rule 45 can operate to prevent discovery under Section 1782); *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 192 (3d Cir. 1999) ("Section 1782 . . . incorporates by reference the scope of discovery permitted by the Federal Rules of Civil Procedure.").  A foreign party seeking access to information for use in a foreign proceeding is entitled to no greater assistance from the court than a domestic applicant seeking access to information for a domestic proceeding.  Rule 45 is foremost among the protections for third parties, strangers to litigation, from whom documents or information is sought for use in a court proceeding.  *See, e.g.*, *BSN Med., Inc. v. Parker Med. Assocs., LLC*, No. 10 Misc. 15 (JFK), 2011 WL 197217, at *2 (S.D.N.Y. Jan. 19, 2011); *In re Biovail Corp. Sec. Litig.*, 247 F.R.D. 72, 74 (S.D.N.Y. 2007).

---

[9]      Although BNY Mellon highlights some of the deficiencies of the proposed subpoena under Rule 45 insofar as they constitute grounds for denial of the Application, BNY Mellon does so without waiver of its right to move to quash the subpoena on these or any other grounds should the Application be granted.

Surprisingly, however, Postalis entirely neglects the law interpreting Rule 45 save for a brief mention to explain why it thought it could proceed *ex parte*. *See* Memorandum, at 13.

That law is fatal to Postalis's Application. Under Rule 45, the court will quash a subpoena issued upon a third party for documents that are in the possession of a party; Rule 45 cannot be used to circumvent the rules on party proceedings. *Burns v. Bank of Am.*, No. 03 Civ. 1685 (RMB) (JCF), 2007 WL 1589437, at *14 (S.D.N.Y. June 4, 2007) ("[S]ubpoenas under Rule 45 are clearly not meant to provide an end-run around the regular discovery process under Rules 26 and 34."). Where a party seeks documents from a third party that it has not requested from the party who should have those documents, a subpoena can be denied for that reason alone. "When the information sought is equally available through the foreign proceeding from a party to that proceeding, such requests targeting a different person in the United States are by their very nature unduly burdensome." *In re Judicial Assistance Pursuant to 28 U.S.C. § 1782 by Macquarie Bank Ltd.*, No. 2:14 Civ. 00797 (GMN) (NJK), 2015 WL 3439103, at *9 (D. Nev. May 28, 2015); *see also In re Application For An Order Permitting Metallgesellschaft AG To Take Discovery*, 121 F.3d at 79 (when the discovery sought is "equally available in both foreign and domestic jurisdictions, a district court might rely on this evidence to conclude that the § 1782 application was duplicative").

That law also applies with respect to requests to parent corporations for documents in the possession of their subsidiaries. *See In re Fischer Advanced Composite Components AG*, No. C08 Civ. 1512 (RSM), 2008 WL 5210839, at *3-5 (W.D. Wash. Dec. 11, 2008) (exercising discretion not to allow discovery that was unduly burdensome because it was available from the subsidiary company as party to the foreign proceeding); *see also In re Kreke Immobilien KG*, No. 13 Misc. 110 (NRB), 2013 WL 5966916, at *5 (S.D.N.Y. Nov. 8, 2013) (denying discovery

sought from parent company under § 1782 when subsidiary company was a participant in the foreign proceeding).

Postalis seeks to evade these rules by asserting that "[e]ven if BNY Mellon were amenable to subjecting itself to discovery in Brazil, Postalis need not first seek discovery in the foreign tribunal."  Memorandum, at 11 n.2.  But Postalis misses the point.  The issue is not whether Postalis should have first sought to obtain discovery in Brazil from non-party BNY Mellon.  Rather, it is whether having not even inquired if the Brazilian entities have the relevant documents, it can now, under Rule 45, impose that burden on a United States domestic non-party who has not been sued or accused of any wrongdoing.  *See In re Application of Caratube Int'l Oil Co.*, 730 F. Supp. 2d 101, 107 (D.D.C. 2010) (finding that "the district court may, in its discretion, properly consider a party's failure first to attempt discovery measures in the foreign jurisdiction.") (internal citation omitted); *see also In re Digitechnic*, No. C07–414 (JCC), 2007 WL 1367697, at *4 (W.D. Wash. May 8, 2007) ("Digitechnic has not even tried to obtain any of the discovery sought here by way of French discovery tools.  On this point, Digitechnic emphasizes that there is no 'exhaustion' requirement in § 1782.  While this is correct, there is nevertheless no reason that this Court should overlook Digitechnic's failure to attempt any discovery measures in France in making the discretionary decision now before it." (emphasis omitted)).

Indeed, not only has Postalis failed to make any showing that it needs documents from BNY Mellon or that it has requested these documents from the Brazilian entities, it relies on nothing but conjecture to support its claim that BNY Mellon has responsive documents.  It conclusorily states that "Postalis has reason to believe that BNY Mellon may possess or have custody or control of document and information related to, among other matters, [the Brazilian

19

entities'] management of the Brazil Funds and related investment decisions, including its

administration and management of the Brazil Funds."  Martin Decl. ¶ 27.  It provides no

information whatsoever for the Court to judge how it came to that belief or whether it is

reasonable.  *See Crye Precision LLC v. Duro Textiles, LLC*, 689 F. App'x 104, 108 (2d Cir.

2017) ("[A] court plainly has discretion to reject a request for discovery . . . if the request is

based only on speculation as to what potentially could be discovered.") (internal citation and

quotations omitted).

### b.  *The Proposed Subpoena Is Overbroad*

Postalis's argument that "the potential burden and expense of compliance would be

minimal" because it "has propounded only one document request," Memorandum, at 13, is

risible.  That one request demands BNY Mellon search for and produce every single document in

its possession, custody, or control relating to three indirect subsidiaries concerning nine separate

funds over more than a decade, and then produce a witness to testify about all of those subjects.

This overbroad request "bears little resemblance to those cases in which such applications were

routinely approved" under Section 1782.  *See In re Application of OOO Promnefstroy*, Misc. No.

19 Civ. 99 (RJS), 2009 WL 3335608, at *9 (S.D.N.Y. Oct. 15, 2009) (denying application to

take discovery); *see also In re Ex Parte Glob. Energy Horizons Corp.*, 647 F. App'x 83, 86 (3d

Cir. 2016) (denying Section 1782 petition and noting that "Rule 45 counsels against loosely

tailored and burdensome demands for production"); *In re Ex Parte Application of Qualcomm

Inc.*, 162 F. Supp. 3d 1029, 1043 (N.D. Cal. 2016) ("Requests are unduly intrusive and

burdensome where they are not narrowly tailored, request confidential information and appear to

be a broad 'fishing expedition' for irrelevant information."); *In re Digitechnic*, 2007 WL

1367697, at *5 (finding that "the extremely broadly-worded and sweeping requests" would unduly burden the non-party respondent "in terms of time, effort, and expense").

"[I]f the district court determines that a party's discovery application under section 1782 . . . unreasonably seeks cumulative or irrelevant materials, the court is free to deny the application in toto." *See Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 n.6 (2d Cir. 1995).  A court also may deny rather than merely limit discovery sought under Section 1782 "where a narrowly tailored discovery order is not possible." *In re Application of Elvis Presley Enters. LLC for an Order to Take Discovery Pursuant to 28 U.S.C. § 1782*, No. 15 mc 386 (DLC), 2016 WL 843380, at *6 (S.D.N.Y. Mar. 1, 2016).  Thus, the Court should deny the Application rather than expend the "significant effort" necessary to trim these requests. *See, e.g.*, *financialright GmbH v. Robert Bosch LLC*, 294 F. Supp. 3d 721, 740 (E.D. Mich. 2018).

### c.  *Postalis's Application Is Made In Bad Faith And Reflects An Attempt To Circumvent Proof-Gathering Restrictions*

Finally, the Application should be denied because it is based on pretext and pursued in bad faith.  *Euromepa S.A.*, 51 F.3d at 1101 n.6 (noting that district court may deny a petition in full if it is "made in bad faith . . . or unreasonably seeks cumulative or irrelevant materials"); *see also In re Imanagement Servs., Ltd.*, No. Misc. 05 Civ. 89 (FB), 2005 WL 1959702, at *5 n.6 (E.D.N.Y. Aug. 16, 2005) (holding that a Section 1782 that is pretextual or motivated by bad faith "must be denied").

Postalis concealed its true motives from this Court, but not from the Brazilian public. With a similar lack of candor, Postalis misleadingly asserts that the Brazil Courts have issued no orders about limiting Postalis from seeking discovery from BNY Mellon.  *See* Memorandum, at 12.  But Postalis fails to mention it has not requested any discovery from BNY Mellon (or any other third party) in any of the foreign proceedings, and thus there has been no opportunity to

oppose such discovery.  Robalinho Decl. ¶ 51.  Moreover, had Postalis made such a request, it would have had to identify with some detail the purpose of the evidence it was seeking and the basis for its belief that it was in the possession of BNY Mellon—showings that Postalis eschews making here.  *Id.* ¶ 50 (citing requirements of Article 397 of the Brazilian Code).  BNY Mellon then would have had an opportunity to oppose it.  *See In re Kreke Immobilien KG*, 2013 WL 5966916, at *6 ("§ 1782 was not intended 'as a vehicle to avoid . . . an unfavorable discovery decision' from a foreign tribunal.") (internal citation and emphasis omitted).  Thus, Postalis has engaged in an attempt to circumvent not only the proof-gathering restrictions set forth in the Federal Rules of Civil Procedure, but also those of Article 397 of the Brazilian Code.  Robalinho Decl. ¶ 50.  "[I]t naturally follows from the existence of the third *Intel* factor that this kind of subterfuge is a valid reason to reject a § 1782 application in the first place."  *Glock v. Glock, Inc.*, 797 F.3d at 1009  (encouraging parties to "bring evidence of such chicanery" to the court's attention).

22

## CONCLUSION

For the reasons set forth above, the Court should deny Postalis's Application.


Dated: November 20, 2018
      New York, New York

<div style="margin-left:40%">

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

_____

Lewis J. Liman
Jeffrey A. Rosenthal
Members of the Firm

One Liberty Plaza
New York, New York  10006
T: 212-225-2000
F: 212-225-3999
lliman@cgsh.com
jrosenthal@cgsh.com


*Attorneys for Respondent*
   *The Bank of New York Mellon Corporation*

</div>

Of counsel:

Vanessa C. Richardson

## CERTIFICATE OF COMPLIANCE WITH RULE 2(D)

This brief complies with Rule 2(d) of the Individual Practices of Judge John G. Koeltl, because it contains 6,974 words, excluding the part of the brief exempted by the rules. This brief also complies with Rule 2(d) because it is double spaced with legible font, including footnotes, and has reasonable margins.

Dated: November 20, 2018
      New York, New York

                    Respectfully submitted,

                    CLEARY GOTTLIEB STEEN & HAMILTON LLP

                    Lewis J. Liman
                    Jeffrey A. Rosenthal
                    Members of the Firm

                    One Liberty Plaza
                    New York, New York  10006
                    T: 212-225-2000
                    F: 212-225-3999
                    lliman@cgsh.com
                    jrosenthal@cgsh.com

                    *Attorneys for Respondent*
                    *The Bank of New York Mellon Corporation*

Of counsel:

Vanessa C. Richardson