UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/20/18

18-mc-497 (JGK)

IN RE APPLICATION OF POSTALIS FOR AN
ORDER TO TAKE DISCOVERY PURSUANT TO
28 U.S.C. § 1782

MEMORANDUM OPINION
& ORDER

JOHN G. KOELTL, District Judge:

Postalis Instituto de Prevêdencia Complementar – Sob
Intervenção ("Postalis") seeks an order under 28 U.S.C. § 1782
authorizing it to take discovery from The Bank of New York
Mellon ("BNY Mellon").

I.

The following facts are taken from Declarations submitted
by the parties.

Postalis brings this discovery application, asserting that
the requested evidence is for use in six ongoing proceedings
that Postalis instituted in the Brazilian courts against three
subsidiaries of BNY Mellon -- BNY Mellon Serviços Financeiros
Distribuidora de Títulos e Valores Mobilários S.A. ("DTVM"),
which is an indirect subsidiary of BNY Mellon; BNY Mellon
Administração de Ativos Ltda. ("Ativos"), which is a subsidiary
of DTVM; and BNY Mellon Alloção de Patrimônio Ltda.
("Patrimônio"), another indirect subsidiary of BNY Mellon

(collectively, "the BNY Mellon subsidiaries"). Martin Decl. ¶ 3; Robalinho Decl. ¶¶ 7-10.

BNY Mellon is a global financial services firm that is headquartered in the Southern District of New York. Rose Decl. Ex. 1. BNY Mellon has direct and indirect subsidiaries in over two dozen countries. Id. Many of BNY Mellon's subsidiaries manage and service assets for financial institutions, corporations, and individual investors. Robalinho Decl. ¶¶ 7-10.

Postalis is a pension plan that was created for Brazilian postal workers. Martin Decl. ¶ 6. Between 2005 and 2008, Postalis invested in two foreign debt funds: Brasil Sovereign II Fundo de Investimento em Divida Externa ("the Sovereign Fund"), and Atlântica Real Sovereign Fund ("the Atlântica Fund") (together "the foreign debt funds.")[1] Martin Decl. ¶ 8. Postalis selected DTVM to administer the Sovereign Fund, and DTVM selected Ativos and Patrimônio to provide investment management services for nine investment funds,[2] including the foreign debt funds, in which Postalis invested. Id. ¶¶ 9-10.

---

[1] In November 2010, the Atlântica Fund merged into the Sovereign Fund. Martin Decl. ¶ 8.
[2] The specific investments at issue are (1) the Sovereign Fund, (2) the Atlântica Fund, (3) BNY Mellon Douro Fundo de Investimento em Cotas de Fundos de Investimento Multimercado, (4) São Bento Fundo de Investimento em Cotas de Fundos de Investimento Multimercado, (5) the FCP Fundo de Investimento em Cotas de Fundos de Investimento Multimercado, (6) the Fundo de Investimento General Shopping Ativo e Renda – FII, (7) the Fundo de Investimento em Cotas de Fundos de Investimento Multimercado Serengeti, (8) the Riviera Fundo de

Postalis states that in 2011 it began receiving reports of fraud and mismanagement of the foreign debt funds. Id. ¶ 11. Specifically, Postalis says that it received reports that the Comissão de Valores Mobiliários ("CVM") -- Brazil's counterpart to the United States Securities Exchange Commission ("SEC") -- and the SEC were investigating misconduct related to the funds in which Postalis was invested. Id. Postalis further alleges that in May 2011, DTVM notified Postalis that CVM was investigating transactions by the Sovereign Fund's portfolio manager -- specifically, that the portfolio manager had allowed private securities to constitute more than 20 percent of the Sovereign Fund's assets in violation of the fund's bylaws. Id. ¶ 12. DTVM assured Postalis that it would require the portfolio manager to seek the approval of both Postalis and DTVM before engaging in future private securities transactions. Id. ¶ 13. Despite these assurances, Postalis states that in January 2012, DTVM notified Postalis that all of the Sovereign Fund's government bonds had been replaced by private securities in violation of Brazilian securities regulations, the fund's bylaws, and Postalis's investment policies. Id. ¶ 14.

In addition to the fraud related to the Sovereign Fund, Postalis states that it discovered fraud, violations of pension

---

Investimento Multimercado – Crédito Privado, and (9) the Tejo Fundo de Investimento em Ações. Appl. Ex. 2 at 1.

fund regulations, and violations of fund bylaws, with respect to several other investment funds in which Postalis was invested and for which the three BNY Mellon subsidiaries provided fund-administrator and investment-management services to Postalis. Id. ¶ 16.

BNY Mellon states that the CVM, the SEC, and the Brazilian Public Prosecutor have all investigated the Postalis fraud and have each determined that Postalis's losses were largely caused internally by Postalis's own former leaders committing fraud and embezzlement. Robalinho Decl. ¶ 15. In October 2017, Superintendência Nacional de Previdência Complementar ("Previc") -- Brazil's pension fund regulator -- placed Postalis under intervention and appointed an independent manager due to Postalis's failure to comply with standards related to the accounting of technical reserves and applications of resources. Id. ¶ 17. Postalis remains under the control of the intervener appointed by Previc. Id. ¶ 18.

Postalis filed six lawsuits against the BNY Mellon subsidiaries in Brazilian courts for negligent performance of duties and failure to perform duties with respect to the nine funds in which Postalis was invested. Martin Decl. ¶¶ 17-23. BNY Mellon has not been named as a party in any of the Brazilian proceedings, and there are no allegations that BNY Mellon played any role in the alleged fraud. Robalinho Decl. ¶¶ 30-31. BNY

Mellon claims that the six lawsuits are each attempts by Postalis to shift responsibility for its investment losses from the funds and Postalis itself to the BNY Mellon subsidiaries on the theory that the subsidiaries acted negligently or violated local regulations in their capacities as administrators and investment managers.

Postalis states that it seeks discovery from BNY Mellon regarding the nine funds in which Postalis was invested, including information regarding the administration and management of the funds, relevant investment decisions, and any investigation conducted by BNY Mellon of the BNY Mellon subsidiaries' administration and management of the investment funds.[3] Postalis seeks documents from January 1, 2005, which is approximately the time that Postalis hired DTVM, until February 4, 2016, which is when Postalis initiated its sixth lawsuit in Brazil. Mem. at 12. In addition to document discovery, Postalis seeks to depose a representative of BNY Mellon under Federal Rule of Procedure 30(b)(6) regarding the same subjects for which Postalis seeks documents. Appl. Ex. 2, at 6.

---

[3] Postalis's proposed subpoena includes one document request that states: "This subpoena requires production of all documents from January 1, 2005 to February 4, 2016 in Your possession, custody or control concerning: the Brazil Funds, including the management of the Brazil Funds, investment decisions related to them, and any investigation You conducted with respect to BNYM Brazil's administration and/or management of the Brazil Funds." Appl. Ex. 2, at 6 (emphasis added).

II.

28 U.S.C. § 1782 "authorizes, but does not require,"
district courts to provide assistance to discovery applicants
for use in foreign proceedings. Intel Corp. v. Advanced Micro
Devices, Inc., 542 U.S. 241, 255 (2004). Under § 1782, courts
have wide discretion to determine whether to grant discovery,
and can tailor any requested discovery "to avoid attendant
problems." Application of Esses, 101 F.3d 873, 876 (2d Cir.
1996). In considering discovery applications under § 1782,
courts should consider the twin aims of the statute: "providing
efficient means of assistance to participants in international
litigation in our federal courts and encouraging foreign
countries by example to provide similar means of assistance to
our courts." Id. (quoting In re Application of Malev Hungarian
Airlines, 964 F.2d 97, 100 (2d Cir. 1992)).

In order to obtain discovery under § 1782, the applicant
must show the following basic requirements:

> (1) that the person from whom discovery is
> sought reside (or be found) in the district of
> the district court to which the application is
> made, (2) that the discovery be for use in a
> proceeding before a foreign tribunal, and (3)
> that the application be made by a foreign or
> international tribunal or "any interested
> person."

Id. at 875 (quoting In re Application of Gianoli Aldunate, 3
F.3d 54, 58 (2d Cir. 1993)).

When these three requirements are met, district courts have broad discretion to decide whether to grant or deny the discovery request. In making this decision, courts are to consider, among other factors: (1) whether the discovery target is a party to the foreign proceeding, (2) whether the foreign tribunal will be receptive to assistance from a United States federal court, (3) whether the discovery request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," and (4) whether the discovery request is unduly intrusive or burdensome. Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 264-65 (2004); In re Godfrey, 526 F. Supp. 2d 417, 419 (S.D.N.Y. 2007).

A.

Turning first to the three requirements of § 1782, the parties do not dispute that BNY Mellon is found in the Southern District of New York,[4] nor do they dispute that Postalis is an "interested person" under the statute.[5] The parties focus their dispute on the second requirement -- that the requested

---

[4] A corporation is found in the district where it is incorporated or headquartered. See In re Godfrey, 526 F. Supp. 2d at 422. BNY Mellon maintains its headquarters at 240 Greenwich Street, New York, NY 10286, and is therefore located in the Southern District of New York. See Rose Decl., Ex. 1.

[5] As a party to the six lawsuits in Brazil, Postalis is an "interested person" under § 1782. See In re Application for an Order Permitting Metallgesellschaft AG to take Discovery, 121 F.3d 77, 79 (2d Cir. 1997).

discovery be "for use" in a foreign proceeding. See Application of Esses, 101 F.3d at 875. As the applicant, the burden is on Postalis to show that the requested discovery is for use in the foreign proceedings. Cf. In re Kolomoisky, No. M19-116, 2006 WL 2404332, at *3 (S.D.N.Y. Aug. 18, 2006) (placing the burden of proving the § 1782 requirements on the discovery applicant).

Postalis asserts that the evidence it seeks from BNY Mellon will assist Postalis in proving that the BNY Mellon subsidiaries acted negligently and breached fiduciary duties in their administration and management of Postalis's investments. Accordingly, Postalis asserts that the requested discovery is "for use" in the six currently-pending foreign proceedings. See In re Accent Delight Int'l Ltd., 869 F.3d 121, 132 (2d Cir. 2017) (holding that "for use" in § 1782 requires only "that the requested discovery is something that will be employed with some advantage or serve some use in the proceeding" (quotation marks omitted)).

BNY Mellon points the Court to Postalis's own public statements in Brazil, in which Postalis admitted that the purpose of this discovery application is for Postalis to obtain discovery that Postalis can use to plead a new action against BNY Mellon in the United States. See Robalinho Decl. Ex. C, at 2. Postalis has publicly stated its hope to bring a lawsuit against BNY Mellon in the United States, and has affirmed that

the present discovery application will assist Postalis in
bringing such a lawsuit because, according to the Legal Manager
of Postalis, "[i]t doesn't help us to go into this [lawsuit]
blind." Id. Ex. D, at 2. Shortly before making this discovery
application, it was reported in Brazil that Postalis had hired
Kobre & Kim, the lawyers who brought the current § 1782
application, "to initiate proceedings known as 'Discovery',
which is searching for documents before a lawsuit is filed. The
objective is to try to find evidence that BNY Mellon in the U.S.
was aware of alleged irregularities committed by the Brazilian
branch with regard to Postalis. Only after that does the fund
intend to file a lawsuit against the bank in the U.S. court
system." Id. Ex. C, at 2; see also Ex. D, at 2. These comments
were reported in two separate Brazilian publications and have
not be disowned or contradicted by any witness for Postalis on
this application. Because Postalis has publicly declared that it
is using this discovery application to obtain discovery for use
in pleading a case against BNY Mellon in the United States, BNY
Mellon contends that the requested discovery is not for use in a
foreign proceeding.

Postalis does not deny that it made these public
statements. Rather, Postalis asserts that the fact that the
discovery sought could be useful in a filing a lawsuit against

BNY Mellon in the United States does not also mean that the discovery cannot be used in the pending Brazilian proceedings.

Under § 1782, applicants are required to show that the evidence is "something that will be employed with some advantage or serve some use in the [foreign] proceeding." Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P., 798 F.3d 113, 120 (2d Cir. 2015) (quotation marks omitted). Given Postalis's public statements that this application is an attempt to gain pre-litigation discovery for a prospective lawsuit in the United States, Postalis's assertions that the requested discovery is for use in the Brazilian proceedings are not credible. A court in this District recently denied a § 1782 discovery application because it was "concerned that [the applicant] [wa]s using the § 1782 petition as a fishing expedition to determine if it should pursue litigation against [the discovery target.]" See Ayyash v. Crowe Horwath LLP, No. 17mc482, 2018 WL 2976017, at *3 (S.D.N.Y. June 13, 2018). Although it was possible for the discovery materials to be construed as for use in a foreign proceeding, the court in Ayyash exercised its discretion to deny the discovery request. Id.

Postalis contends that if the Court is concerned that this application is a "fishing expedition," then the appropriate remedy is for the Court to enter a protective order that limits use of any resulting evidence to the proceedings pending in

Brazil. However, a protective order is not an effective remedy for an overbroad discovery request that is searching for whether to bring a lawsuit in the United States. The results of the discovery request can shape the decision whether to bring such a lawsuit and thereafter the types of documents to seek, even if the documents that are produced in response to the § 1782 application are never actually used in the United States lawsuit. After all, Postalis is reported to have said it seeks the discovery to avoid going into the United States lawsuit "blind." Robalinho Decl. Ex. D, at 2.

The scope of Postalis's discovery request shows that the evidence Postalis seeks is not for use in a foreign proceeding. The subpoena is not targeted towards the conduct and knowledge of the BNY Mellon subsidiaries, but rather, focuses on the conduct and knowledge of BNY Mellon related to the investment funds, even though BNY Mellon is not a party in any of the Brazilian litigations. The subpoena requests "all documents . . . concerning: the Brazil funds, . . ." Appl. Ex. 2, at 6. It is not limited to any specific issues in the Brazilian litigations.

In the face of these arguments, Postalis has not carried its burden to show that the information sought regarding BNY Mellon is "for use in a foreign proceeding." 28 U.S.C. § 1782. "By adopting the phrase 'for use,' Congress plainly meant to

require that § 1782 applicants show that the evidence sought is something that will be employed with some advantage or serve some use in the proceeding." See Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P., 798 F.3d at 120 (quotation marks omitted). Postalis has not made such a showing. See id. Postalis states, in a conclusory fashion, that it believes the evidence sought from BNY Mellon will support Postalis's claims against the BNY Mellon subsidiaries that the subsidiaries acted negligently and breached fiduciary duties related to their administration and management of the funds. Martin Decl. ¶ 28. Beyond this assertion -- which essentially restates Postalis's claims against the BNY Mellon subsidiaries -- Postalis makes no showing that the evidence sought is likely to be for use in the foreign proceedings.[6] Postalis's application is unlike other § 1782 requests where the applicant made a sufficient showing that the evidence sought was for use in a foreign proceeding. See, e.g., In re Furstenberg Finance SAS, No. 18mc44, 2018 WL 3392882, at *7-8 (S.D.N.Y. July 12, 2018) (noting the specific

---

[6] It is not until Postalis's reply that Postalis attempts to identify the types of documents that it seeks. See Suppl. Martin Decl. ¶ 11 (stating that documents such as "internal compliance reports, communications, and emails exchanged between BNY Mellon" and the BNY Mellon subsidiaries could support Postalis in the Brazilian proceedings). However, the subpoena is written broadly to capture much more than these documents, and courts in this Circuit "generally will not consider arguments raised for the first time in a reply brief." See Patterson v. Balsamico, 440 F.3d 104, 113 n.5 (2d Cir. 2006).

nature of the discovery items sought and their relevance to a foreign proceeding).

None of the cases cited by Postalis involve situations where the discovery applicant had publicly stated that the discovery application was being made to assist the applicant in filing a lawsuit against the discovery target in the United States. Therefore, the courts in those cases had less reason to be skeptical of the discovery applicant's assertion that the evidence was for use in a foreign proceeding. See, e.g., In re Accent Delight Int'l Ltd., 869 F.3d at 124 (holding that § 1782 does not forbid a discovery applicant from using lawfully obtained evidence in subsequent foreign proceedings); Brandi-Dohrn v. IKB Deutsche Industriebank AG, 673 F.3d 76, 82-84 (2d Cir. 2012) (holding that the "for use" requirement does not mean that the evidence must be admissible in the foreign tribunal); In re Application Pursuant to 28 U.S.C. Section 1782 for an Order Permitting Christen Sveaas to Take Discovery from Dominique Levy, L & M Galleries & other non-participants for use in Actions Pending in the Norway, 249 F.R.D. 96, 107 (S.D.N.Y. 2008) (finding that the requested evidence was relevant to the foreign proceeding, and therefore could be "for use" in the foreign proceeding).

Indeed, courts in this Circuit have instructed that, "if the district court determines that a party's discovery

application under section 1782 is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials, the court is free to deny the application in toto, just as it can if discovery was sought in bad faith in domestic litigation." Id. at 106. Seeking discovery under § 1782 for an improper purpose, namely for pre-litigation discovery otherwise not permitted under the Federal Rules of Civil Procedure, is bad faith just as a harassing application is in bad faith.

Postalis's public statements that this application is for use in filing a future lawsuit in the United States belies its assertion that the requested discovery is for use in a foreign proceeding. Moreover, as explained below, the discretionary factors announced by the Supreme Court in Intel also counsel against granting the discovery request.

B.

The parties do not dispute that Brazilian courts are receptive to the assistance of United States federal courts. See Intel, 542 U.S. at 264. Accordingly, the Court focuses only on the remaining three factors: whether the discovery target "is a participant in the foreign proceeding," whether the discovery application "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or

the United States," and whether the discovery request is unduly
intrusive or burdensome. See id. at 264-65.

"The first Intel factor requires the district court to
consider whether the information sought in the application is
within the jurisdiction of the foreign court." In re Application
of Elvis Presley Enters. LLC for an Order to Take Discovery
Pursuant to 28 U.S.C. § 1782, No. 15mc386, 2016 WL 843380, at *3
(S.D.N.Y. Mar. 1, 2016). The reason that courts distinguish
"between discovery from participants in the foreign proceeding
and nonparticipants [is] because 'nonparticipants in the foreign
proceeding may be outside the foreign tribunal's jurisdictional
reach; hence, their evidence, available in the United States,
may be unobtainable absent § 1782(a) aid.'" Id. (citing Intel,
542 U.S. at 264).

BNY Mellon is not, itself, a participant in the foreign
proceeding. However, the BNY Mellon subsidiaries are. Courts in
this district have held that when a subsidiary is party to a
foreign proceeding and the parent is the discovery target, the
first Intel factor weighs against granting the discovery
application because the evidence sought is within the foreign
tribunal's jurisdictional reach. See id. (Finding that this
factor weighed against granting discovery because "[a]lthough
SME is not a party to the German proceeding, Arista is its
wholly-owned subsidiary. As such, Arista has access to the

documents and information held by SME."); In re Kreke Immobilien KG, No. 13mc110, 2013 WL 5966916, at *5 (S.D.N.Y. Nov. 8, 2013) ("When applied to this case, this factor supports Deutsche Bank's position. To the extent that the petitioner seeks documents from Oppenheim -- and is only doing so through Deutsche Bank because Oppenheim is now its wholly-owned subsidiary -- discovery is fundamentally being sought from a participant in the German proceeding.").

To the extent that the requested discovery is within the jurisdictional reach of the Brazilian courts, this factor weighs in favor of denying Postalis's discovery request.

The next factor is whether the discovery application conceals an attempt by Postalis to circumvent the laws or policies of Brazil or the United States. BNY Mellon argues that Postalis's discovery application is an attempt to circumvent the Federal Rules of Civil Procedure to obtain pre-litigation discovery. Courts have "acknowledge[d] that a § 1782 applicant could attempt to abuse the statute to obtain documents outside the discovery procedures set forth in the Federal Rules of Civil Procedure," and held that in such cases "it naturally follows from the existence of the third Intel factor that this kind of subterfuge is a valid reason to reject a § 1782 application in the first place." Glock v. Glock, Inc., 797 F.3d 1002, 1009 (11th Cir. 2015).

Section 1782 incorporates the Federal Rules of Civil Procedure by reference. See Bayer AG v. Betachem, Inc., 173 F.3d 188, 192 (3d Cir. 1999). Postalis has publicly affirmed its intention to use this discovery request as a vehicle for obtaining discovery to help Postalis plead a case against BNY Mellon in the United States. "The American legal system does not permit pre-action discovery." Frigerio v. U.S., No. 10cv9086, 2011 WL 3477135, at *1 (S.D.N.Y. Aug. 5, 2011). Although Rule 27 allows parties to take pre-action discovery in limited circumstances, it "is not a grant of authority to take discovery in order to gather enough evidence to bring a claim." Id. Allowing parties to conduct such discovery before an action is commenced would be "an abuse of the rule." Id. (quotation marks omitted). Therefore, to the extent that Postalis brings this application for the purpose of obtaining pre-litigation discovery -- a purpose that Postalis has admitted -- Postalis seeks to circumvent the laws and policies of the United States embodied in the Federal Rules of Civil Procedure. Therefore, the third Intel factor weighs against granting Postalis's discovery request.

The final Intel factor -- whether the requested discovery is unduly burdensome or intrusive -- also weighs against granting the application. In evaluating this factor, courts are to "apply the familiar standards of Rule 26 of the Federal Rules

of Civil Procedure." Application of Elvis Presley Enterprises LLC for an Order to Take Discovery Pursuant to 28 U.S.C. § 1782, No. 15mc386, 2016 WL 843380, at *5 (alteration accepted and citation omitted). Rule 26 limits discovery to evidence that is relevant to any party's claim or defense and "proportional to the needs of the case . . . ." Id. Postalis's proposed subpoena is plainly overbroad. It asks BNY Mellon to produce all documents relating to nine investment funds for over a decade, irrespective of whether those documents are related to the issues in the Brazilian litigations. Postalis also asks for BNY Mellon to produce a witness to testify to the same. As discussed above, Postalis has not shown how all of the requested evidence would be relevant to a claim or defense in the foreign proceedings.

The Supreme Court has made clear that "unduly intrusive or burdensome requests may be rejected or trimmed." Intel, 542 U.S. at 265. Postalis suggests that if the Court finds its discovery request to be overbroad, the Court may narrow the request. However, because Postalis has not made a sufficient showing that the requested discovery is "for use" in a foreign proceeding, or how it is relevant to a claim or defense in the foreign proceedings, the Court declines the invitation.

CONCLUSION

For the reasons explained above, Postalis's application for an order pursuant to § 1782 is **denied**. The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. The Clerk of Court is directed to close this case and to close all pending motions.

**SO ORDERED.**

Dated:     New York, New York
           December 20, 2018

_____
        John G. Koeltl
**United States District Judge**